UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBIN WALKER,

          Plaintiff,

   -against-

NEW YORK CITY DEPARTMENT OF CORRECTIONS
CLEMENT GLEN, RANDOLPH JOHNSON,
VANESSA SINGLETON, LUIS RIVERA,
VALERIE OLIVER AND RONALD WHITFIELD.

          Defendants.

---

**Second (Corrected) Amended Complaint**

INDEX: 05-CV-10480 (LMM)(THK)

*JURY TRIAL DEMANDED*

Plaintiff, ROBIN WALKER, by and through her attorneys, FRANK & ASSOCIATES, P.C., complains as follows:

### I. PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover monetary damages and affirmative relief based upon Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, (hereinafter "Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law, Executive Law § 296 *et seq.* (hereinafter "NYSHRL,") the New York City Human Rights Law, N.Y.C. Admin. Code §8-102, *et seq.* (hereinafter "NYCHRL") New York Civil Service Law § 75 and other appropriate rules, regulations, statutes and ordinances.

### II. JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to §42 U.S.C. 2000e-5(f) (3),

28 U.S.C. §1331 and 1337.

3. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. §1367.

4. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391, because the unlawful discriminatory conduct occurred within the State of New York, County of New York.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §2201 and 2202.

6. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). Plaintiff brought this action within ninety (90) days of the receipt of a Notice of Right to Sue, issued by the EEOC on August 26, 2005. Plaintiff files this amended complaint as of right under Federal Rule of Civil Procedure 15(a).

### III.   PARTIES

7. Plaintiff, **ROBIN WALKER**, ("Plaintiff" or "Walker") is and was at all times relevant herein, a citizen of the State of New York residing in the County of Queens.

8. At all times relevant herein, Plaintiff has been an "employee" within the meaning of 42 U.S.C. § 2000e (f), NYSHRL §292(5) and 190(2) of the New York Labor Law, N.Y. LAB. LAW § 190(2) (McKinney 1986 Supp. 2001).

9. At all times relevant herein, Plaintiff has been a "person" within the meaning of

NYSHRL §292(1).

10. Upon information and belief, The New York City Department of Corrections. ("Defendant" or "The Department of Corrections" or "DOC") is and has been a domestic municipal corporation organized and existing under the laws of the State of New York.

11. Upon information and belief, Defendant is and has been a "public employer" within the meaning of New York Civil Service Law.

## IV. STATEMENT OF FACTS

12. In or around March 1990, Walker began her employment with the Department of Corrections as a Correction Officer.

13. In or around March 1999, Walker filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

14. The EEOC issued a Determination letter on April 11, 2000.  See Exhibit A

15. Thereafter, Walker filed an employment discrimination complaint against the Defendants in Federal Court Southern District of New York.  See Exhibit B (Index No.: 01-CV-01116)

16. After Plaintiff instituted the lawsuit, Defendants began a series of acts designed to create a hostile work environment in retaliation for Walker's complaints about discrimination, gender inequality, favoritism and disparate treatment.

17. The first act of retaliation occurred when Walker became eligible for promotion to Captain in 2001 after serving the DOC for 11 years. Along with other candidates for promotion, Walker's name was placed on a promotional list.

3

18. After instituting the 2001 lawsuit, Walker's name was removed from the promotional list allegedly due to a civil service "one in three" rule whereby one out of every three individuals are removed from the promotional lists.

19. Plaintiff was advised of this rule by Allen Van Gursky, Personnel Manager.

20. Ms. Walker contacted the Human Resources Department to check the accuracy of Van Gursky's statement, and was advised that the "one in three" rule was not applicable to the promotional list for Captain(s). The subject list was in fact a Captains Promotional List.

21. Upon information and belief, Defendant removed Walker's name from the promotional list in retaliation for Walker's complaints about discrimination, disparate treatment and gender inequality.

22. Plaintiff sought reinstatement on the promotional list through conversation with Steve Robinson, COBA Union Delegate. Based on information and belief, Robinson took the appropriate steps to return Walker's name to the list.

23. Van Gursky refused to reinstate Walker on the promotional list due to an alleged conviction in a criminal case against her, for which no conviction occurred.

24. Plaintiff was not ever been convicted of a crime. Plaintiff does not have a criminal record.

25. Captain Walker was in fact arrested however never convicted.

26. Walker was subjected to Departmental discipline as a result of the above arrest and subsequent arrests.

27. Similarly situated corrections officers were not disciplined for their arrests stemming from related incidents specifically one Timberlyne Parker, a male

4

Corrections Officer.

28. Upon information and belief, Defendants singled out Plaintiff for discipline in retaliation for her complaints about discrimination.

29. As a result, Plaintiff's promotion to Captain was delayed approximately two (2) years.

30. Plaintiff was finally promoted to Captain in July 2003.

31. Newly promoted Captains are placed on probation for one (1) year.

32. On or about December 1, 2003, Plaintiff was scheduled to transfer from the AMKC (95) facility to the ARDC (74), a preferred assignment.

33. On or about December 2003, Correction Officer Barry Lee ("Lee") falsely alleged Plaintiff flattened his car tires the previous August approximately five (5) months earlier.

34. Lee was an officer in the facility Plaintiff was about to transfer into. This allegation was entirely fabricated. As a result of this suspiciously delayed and specious allegation, Plaintiff's scheduled transfer was blocked.

35. The DOC investigated Lee's complaint and determined it to be unfounded.

36. Upon information and belief, Lee's false allegations were designed to prevent Plaintiff's transfer, to create a hostile work environment in retaliation for Plaintiff's complaints of discrimination and to cause a violation of probation for which Capt. Walker was under as a result of her recent promotion.

37. Plaintiff was transferred again. This time to EMTC, a less desirable facility. The on-going harassment continued.

38. Plaintiff was subjected to an environment that included friends of Timberlyne

5

Parker, an individual who testified against Plaintiff at a separate Departmental Hearing and Criminal Court Trial.

39. Plaintiff complained about the work environment to Frank Squillante ("Squillante") Warden and Bradley Averill ("Averill") Administrative Deputy and Arthur Olivari ("Olivari"), Deputy Warden of Security.

40. Walker's complaints went unresolved.

41. Walker requested a transfer.

42. Walker's request was rejected.

43. On or around August 2004, Plaintiff's subordinate, Corrections Officer Larry Reagan ("Reagan") broke up a fight between two (2) male inmates at EMTC.

44. One of the inmates, Mariah Lopez, filed an excessive force complaint against Reagan after Plaintiff's tour ended.

45. The incoming Captain, T. Martin, was responsible for investigating this incident.

46. The incoming Captain, T. Martin, failed to investigate the allegation of force.

47. The next day, Plaintiff learned of the incident involving Reagan.

48. Plaintiff notified the Deputy Warden Robert Kinloch ("Kinloch").

49. Kinloch told Plaintiff to investigate the claim against Reagan.

50. Plaintiff conducted an investigation during which she determined the allegation unfounded, that the use of force was necessary to separate the parties who were assaulting each other.

51. Oliveira learned of the allegation.

52. Oliveira accused Plaintiff of failing to discipline C.O. Reagan for his use of force.

53. Captain Walker had already completed her investigation into the allegation.

54. Walker was subsequently disciplined for failing to report the use of force on an inmate.

55. Squillante and Averill told Plaintiff she was written up for failing to report the use of force by Reagan even though Walker's investigation was completed and the use of force was appropriate. As a result, defendant's extended Walker's probationary period for an additional six (6) months, suffered the loss of vacation and sick days and was administratively transferred from EMTC to RMSC. Prior to this extension Plaintiff was extended by Van Gursky for taking earned vacation and sick days during her first year as Captain. Based on information and belief, no other Captain was disciplined in this or a similar manner as compared to Plaintiff.

56. Squillante and Averill filed numerous false EEO charges and sought disciplinary action against Plaintiff to cause her humiliation, embarrassment and pain. As a direct result of Squillante's and Averill's acts, Plaintiff experiences annoyance and alarm. Based on information and belief, no other Captain has experienced this level of harassment.

57. Captain Walker investigated the incident and determined that Officer Reagan did not utilize excessive force when he broke up a fight between the two inmates.

58. Despite Captain Walker's conclusion, Oliveira Ordered Plaintiff to file a Command Discipline charge against Reagan. Walker complied with Oliveira's instructions as a subordinate but was subsequently herself disciplined.

59. Oliveira then filed an MOC ("Memorandum of Complaint") on Plaintiff for allegedly failing to report the use of force by Reagan.

7

60. From in or around December 2003 to April 2004, Plaintiff took approximately 30 days vacation.

61. In or around July 2004, when Plaintiff's probationary period was ending, Squillante told Plaintiff he was extending her probationary period by one day for each day of her vacation. Captain Walker's new probationary period was scheduled to end September 6, 2004.

62. Upon information and belief, no other Captain's probationary period was ever extended for taking earned and/or accrued vacation days.

63. Upon information and belief, Defendants continued to create a hostile work environment in retaliation for Plaintiff's complaints about discrimination.

64. On or around November 17, 2004, Plaintiff requested C.O. Charles Damiani ("Damiani") to locate the suicide prevention aide in response to building 12 housing unit mandated procedures.

65. Instead C.O. Damiani went on meal break.

66. C.O. Damiani failed to comply or locate the aide.

67. On or around November 17, 2004, Plaintiff disciplined Damiani for failing to follow orders.

68. Damiani claimed to be having a heart attack.

69. Plaintiff called medical personnel and ADW Randolph Johnson ("Johnson") to assist Damiani. Johnson ignored Ms. Walker's request for assistance by stating in sum and substance GOOD BYE, GOOD BYE and hung up.

70. Later that evening, Johnson told Captain Walker that Damiani made a verbal complaint of harassment against her.

71. Plaintiff requested a copy of the report though none was ever provided to her.

72. In or around December 2004, Inmate Juwanna Wrotten ("Wrotten") filed a complaint alleging unreasonable use of force by Capt. Cameron and Saul.

73. The incident was reported to Captain Michael Grey ("Grey") the supervisor on duty.

74. Under standard operating procedures, Grey should have investigated the incident.

75. The investigation was assigned to Plaintiff even though Plaintiff was not on tour at that time.

76. Thereafter, Plaintiff arrived on schedule for her tour. ADW Johnson claimed the incident just occurred and assigned Plaintiff to investigate the use of force allegation made by the inmate.

77. Johnson did not give Plaintiff a deadline for completing the investigation.

78. Plaintiff relied on Saul to provide her with the necessary information to complete her investigation.

79. Plaintiff later learned that the report was due on December 3.

80. Plaintiff was having difficulty obtaining reports from Captain Milton Saul, the Captain present during Wrotten's altercation. As a result, Plaintiff could not complete the investigation in a timely fashion in spite of her diligent efforts.

81. Plaintiff sought an extension as Saul had caused undue delay.

82. Thereafter, Johnson wrote a Command Discipline report against Plaintiff for failing to complete the investigation timely.

83. In his report, Johnson claimed he provided Plaintiff an extension in the presence of ADW Edward Watson ("Watson") and Capt. Walker still failed to complete the

investigation on time.

84. Plaintiff never received an extension to complete the investigation.

85. In or around January 3, 2005, a hearing was held before Deputy Warden Vanessa Singleton ("Singleton") regarding Johnson's Command Discipline report.

86. Plaintiff offered evidence in her defense.

87. Plaintiff attempted to provide evidence of her due diligence in completing the investigation however Singleton refused to review the relevant and material information.

88. Plaintiff attempted to call Watson to prove that Johnson never gave Plaintiff an extension to complete the investigation. Singleton refused to allow Capt. Walker to present evidence in her defense.

89. In retaliation, Singleton dismissed the majority of Captain Walkers disciplinary complaints against subordinates from 2005-2006.

90. In retaliation, Singleton has leveled frivolous and unwarranted EEO charges against Plaintiff with the intent and purpose of harassing and intimidating Plaintiff, which it has.

91. Upon information and belief, Defendant violated Plaintiff's due process right to a fair hearing in retaliation for filing a discrimination claim.

92. As a result, Plaintiff was disciplined by losing three (3) vacation days.

93. Plaintiff complained to Warden Michelle Mack ("Mack") about the violation of her due process rights.

94. Plaintiff filed an appeal.

95. Plaintiff never received a response from Defendants.

96. Upon information and belief, Defendant violated Plaintiff's due process rights in retaliation for filing a discrimination complaint.

97. Today, since Defendants, acting in concert, caused Plaintiff to be removed from certain eligibility lists, Plaintiff was prevented from taking the Assistant Deputy Warden Examination which is presently being filled. Plaintiff should be considered for said position but for the Defendant's retaliation and discrimination.

98. Today, Defendant continues to retaliate and harass Plaintiff.

99. Today, Defendant continuously violates Plaintiff's rights under the law in retaliation for the filing of her previous lawsuit and EEOC charges. Plaintiff has suffered irreparable harm as a result of the Defendant's, its agents and actors conduct.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEW YORK CIVIL SERVICE LAW SECTION 75

100. Plaintiff repeats and realleges each and every allegation herein.

101. Defendants violated Plaintiff's due process right to participate in hearings and testify on her behalf.

102. As a proximate result of Defendants' violation of Plaintiff's due process rights, Plaintiff suffered and continues to suffer loss of employment benefits.

103. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental and consequential damages and expenses.

104. The conduct of Defendants was done in conscious disregard of Plaintiff's rights.

105. Therefore, Plaintiff is entitled an award of compensatory damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## TITLE VII – RETALIATION

106. Plaintiff repeats and realleges each and every allegation herein.

107. Plaintiff was retaliated against by Defendants for filing a discrimination complaint against the DOC and on the basis of her complaints to Defendants regarding the unlawful treatment to which Plaintiff was subjected.

108. Defendants knew or should have known of the retaliation against Plaintiff.

109. Defendants failed or refused to take reasonable action to prevent or promptly correct the retaliation against Plaintiff.

110. As a proximate result of Defendants' discrimination, Plaintiff suffered loss of earnings and other employment benefits, including undue delay in promotion to Captain.

111. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental and consequential damages and expenses. The conduct of Defendants was/is done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory and punitive damages in amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
## NYSHRL – RETALIATION

112.     Plaintiff repeats and realleges each and every allegation herein.

113.     Defendants, acting in concert, retaliated against Plaintiff on the basis of her complaints to Defendants regarding the unlawful treatment to which Plaintiff was subjected.

114.     Defendants knew or should have known of the retaliation against Plaintiff.

115.     Defendants knew or failed or refused to take reasonable action to prevent or promptly correct the retaliation against Plaintiff.

116.     As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of earnings and other employment benefits.

117.     As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental and consequential damages and expenses.

118.     The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of compensatory damages in amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## NYCHRL - RETALIATION

119.     Plaintiff repeats and realleges each and every allegation herein.

120. Plaintiff was retaliated against by Defendants on the basis of her complaints to Defendants regarding the unlawful treatment to which Plaintiff was subjected.

121. Defendants knew or should have known of the retaliation against Plaintiff.

122. Defendants failed or refused to take reasonable action to prevent or promptly correct the retaliation against Plaintiff.

123. As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss earnings and other employment benefits.

124. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental and consequential damages and expenses.

125. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled an award of compensatory damages in amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### TITLE VII - HOSTILE WORK ENVIRONMENT

126. Plaintiff repeats and realleges each and every allegation contained herein.

127. Defendants violated Title VII by subjecting Plaintiff to repeated harassment which created a hostile work environment sufficiently severe and pervasive to alter the conditions of Plaintiff's employment.

128. Defendants knew or should have known of the hostile environment Plaintiff was subjected to.

129. Defendants failed or refused to take reasonable action to prevent or promptly correct the treatment of Plaintiff.

130. As a further proximate result of the actions of Defendants, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

131. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## NYSHRL - HOSTILE WORK ENVIRONMENT

132. Plaintiff repeats and realleges each and every allegation contained herein.

133. Defendants violated NYSHRL by subjecting Plaintiff to repeated harassment which created a hostile work environment sufficiently severe and pervasive to alter the conditions of Plaintiff's employment.

134. Defendants knew or should have known of the hostile environment Plaintiff was subjected to.

135. Defendants failed or refused to take reasonable action to prevent or promptly correct the treatment of Plaintiff.

136. As a further proximate result of the actions of Defendants, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all to Plaintiff's damage in an amount to be determined at trial.

137. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory damages in an amount to be determined at trial.

## VI. DEMAND FOR JURY TRIAL

138. Plaintiff repeats and realleges each and every allegation contained herein.

139. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants alleged herein, Plaintiff demands judgment:

    a. Declaring Defendants violated aforementioned statutes;

    b. Issuing a permanent injunction enjoining Defendants, its agents, employees, officers, and successors in interest, and those acting in concert with Defendants, from engaging in the illegal and unlawful customs, policies, retaliation and practices described herein;

    c. On the First Claim for Relief, Defendants pay Plaintiff compensatory damages in an amount to be determined at trial;

    d. On the Second Claim for Relief, Defendants pay Plaintiff compensatory damages and punitive damages, where applicable, in an amount to be determined at trial;

    e. On the Third Claim for Relief, Defendants pay Plaintiff compensatory damages in an amount to be determined at trial;

    f. On the Fourth Claim for Relief, Defendants pay Plaintiff compensatory

damages in an amount to be determined at trial;

g. On the Fifth Claim for Relief, Defendants pay Plaintiff compensatory and punitive damages, where applicable, in an amount to be determined at trial;

h. On the Sixth Claim for Relief, Defendants pay Plaintiff compensatory damages in an amount to be determined at trial;

i. Plaintiff be made whole in the form of back and front pay, vacation and sick days, afforded and reinstated all benefits that would have been afforded Plaintiff but for said retaliation, disparate treatment and discrimination;

j. Plaintiff's employment record be expunged of all disciplinary findings and reports resulting from Defendants' retaliation against Plaintiff;

k. An award of Plaintiff's cost of suit, including her reasonable attorney's fees;

l. Defendants ordered to pay Plaintiff pre and post-judgment interest;

m. Such other and further relief as the court deems just and proper.

Dated: Farmingdale, New York
May 14, 2007

FRANK & ASSOCIATES, P.C.

By: _____
Neil M. Frank (NF0521)
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
(631) 756-0400

## CERITIFICATE OF SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBIN WALKER,

                Plaintiff,

  -against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, ET AL.,

                Defendant.

No. 05-CV-10480 (LMM)(THK)

---

    I, Ian M. Sack, an attorney duly licensed to practice before this Court, hereby certify that a true copy of the foregoing Plaintiff's were served via first class, postage paid mail upon Defendant's counsel, Andrez Carberry, Esq. Corporation Counsel, New York City Law Department, 100 Church Street, NY, NY on the 14th day of May, 2007.

                                                      Ian M. Sack (IS2717)